## W.R. Grace & Co.-Conn. *vs.* Town of Acton.

No. 03-P-1320.

Middlesex. September 13, 2004. - November 16, 2004.

Present: Cypher, Grasso, & Doerfer, JJ.

*Municipal Corporations,* By-laws and ordinances, Sewers.

This court concluded that the defendant town's by-law, which utilized the uniform unit method for assessing landowners for a proportional part of the charge of making and repairing common sewers pursuant to G. L. c. 83, § 15 (the statute), was facially valid, where that formula addressed the fundamental criteria set forth in the statute without yielding arbitrary or irrational determinations, and would not frustrate the express statutory purpose of proportionality. [463-465]

A Superior Court judge properly concluded that the plaintiff owner of property in the defendant town prematurely brought its claim challenging the defendant's imposition on it of an estimated sewer betterment assessment, where the remedy for such a claim was a petition for abatement applying to a final rather than an estimated assessment. [466]

Civil action commenced in the Superior Court Department on May 23, 2001.

The case was heard by *Elizabeth Butler,* J., on motions for summary judgment.

*F. Alex Parra (Louis N. Levine* with him) for the plaintiff.

*Douglas H. Wilkins* for the defendant.

Cypher, J. The plaintiff, W.R. Grace & Co.-Conn. (Grace), owner of property in the town of Acton, appeals from the dismissal in the Superior Court of its complaint challenging Acton's imposition of an estimated sewer betterment assessment. That complaint, filed on May 23, 2001, sought injunctive relief and a declaration that the by-law under which Acton assessed the betterment charge is invalid. Acting on the parties' cross motions for summary judgment, the trial court judge allowed Acton's motion, denied Grace's motion, declared the sewer as-

sessment by-law valid on its face, and ruled that Grace's claims that constitute a challenge of the by-law as applied to Grace's assessment were premature.

1. *Background.* Pursuant to G. L. c. 83, § 15, Acton adopted a sewer assessment by-law in 1998 and amended it in 1999. Both actions were approved by the Attorney General. In February, 2001, Acton applied the by-law in assessing property owners in a sewer district to be served by construction of the Middle Fort Pond Brook Sewer Project in order to recover a portion of construction costs. Because the project had not been completed at that time, the assessments were estimated at somewhat less than half of the accumulated cost of construction. See G. L. c. 83, § 15B.

On appeal, Grace contends that the judge erred in concluding that (1) Acton's by-law setting forth its method for calculating Grace's proportional share of the costs of construction was consistent with G. L. c. 83, § 15, and was valid on its face under the Home Rule Amendment (art. 89, § 6, of the Amendments to the Massachusetts Constitution) and (2) Grace's allegation that it was improperly assessed for services that Acton could not provide was premature. For the reasons that follow, we affirm the Superior Court judgment.

2. *Discussion.* a. *Validity of the by-law.* After 1978, municipalities were authorized to use not only a "fixed uniform rate" but also a "uniform unit method" by G. L. c. 83, § 15, inserted by St. 1978, c. 214, in assessing owners of land for a "proportional part of the charge of making and repairing" common sewers. G. L. c. 83, § 14. Randall & Franklin, Municipal Law & Practice § 1540 (4th ed. 1993 & Supp. 2004). Rather than making assessments based upon frontage and area as required by the fixed uniform rate, see G. L. c. 83, § 15, as amended by St. 1996, c. 450, § 132, cities and towns could also make assessments "based upon sewerage construction costs divided among the total number of existing and potential sewer units to be served, after having proportioned the cost of special and general benefit facilities" as required by the uniform unit method. G. L. c. 83, § 15, as inserted by St. 1978, c. 214. That method entails the following: "Each sewer unit shall be equal to a single family residence. Potential sewer units shall be

calculated on the basis of zoning then in effect. Existing and potential multifamily, commercial, industrial and semipublic uses shall be converted into sewer units on the basis of residential equivalents." *Ibid.*

Acton's by-law incorporates the uniform unit method. Because Grace's property is undeveloped, nonresidential, and zoned for business use, Acton was required to calculate sewer units based upon residential equivalents on which an assessment could then be based.

In determining whether the by-law is valid, we begin by recognizing that Acton was granted by G. L. c. 83, § 15, the authority to make assessments in accordance with either the "fixed uniform rate" or the "uniform unit method." In doing so, the Legislature was acting within its authority "to make an apportionment of the cost of improvements upon . . . estates receiving peculiar advantages above those accruing in general, by methods requiring that assessments be proportional and founded on and not in excess of special benefits." *Mullen* v. *Sewer Commrs. of Milton*, 280 Mass. 531, 533 (1932), and cases cited. The constitutionality of prior versions of such betterment statutes has been upheld on many occasions. *Id.* at 533-534. See generally 14 McQuillin, Municipal Corporations § 38.121 (3d rev. ed. 1998). Nothing appears in the wording of the uniform unit method set forth in G. L. c. 83, § 15, which indicates that its constitutionality is doubtful.

Because G. L. c. 83, § 15, authorizes cities and towns to make sewer betterment assessments under their ordinances or by-laws, there is clearly no "legislative intent to preclude local action." *Bloom* v. *Worcester*, 363 Mass. 136, 155 (1973). See *Fafard* v. *Conservation Commn. of Barnstable*, 432 Mass. 194, 200-201, 203 (2000). Accordingly, the issue before us is whether Acton exceeded its powers, granted under the Home Rule Amendment, by enacting a by-law inconsistent with the Constitution or laws of the Commonwealth. See *Beard* v. *Salisbury*, 378 Mass. 435, 440 (1979).

It is obvious from an inspection of the formula adopted in Acton's by-law that the fundamental criteria set forth in G. L. c. 83, § 15, to be considered in calculating equivalent potential sewer units for a commercial property, i.e., conversion based on

residential equivalents and zoning then in effect, are addressed in the by-law formula. It also is apparent from G. L. c. 83, § 15, that any determination of the facts related to zoning then in effect is entirely a local municipal consideration. Moreover, the statute does not define, nor does it direct or suggest, any basis to be used for determining "residential equivalents." The record indicates that Acton's determinations of both the zoning and the residential equivalent criteria were not arbitrary or irrational. Both are grounded in a direct relationship between those determinations and expected use of the system, i.e., flow rates in gallons per day, as we summarize in detail in the margin.[1]

Finally, we determine that the by-law will not frustrate the statutory purpose of proportionality expressed in G. L. c. 83, § 15: "A uniform unit method shall be based upon sewerage construction costs divided among the total number of existing and potential sewer units to be served, after having proportioned the cost of special and general benefit facilities." Because the by-law formula is grounded in flow rates for the conversion of commercial uses into equivalent residential sewer units, it is clear that the costs are calculated in proportion to the benefits conferred.

Accordingly, no reason appears to indicate that assessments made under Acton's by-law will not be reasonable and proportional. Compare *Sears* v. *Aldermen of Boston*, 173 Mass. 71, 79-80 (1899). For these reasons, we conclude that the Acton by-law is facially valid.[2]

---

[1]Acton assigns a flow rate to a three-bedroom, single-family residential unit of 300 gallons per day, which equals one sewer unit under the statute, and assigns 75 gallons per day per 1,000 square feet as the flow rate for commercial property. Thus, a business would encompass 4,000 square feet of floor space for every sewer unit. These figures were derived from consideration of actual flow rates in the sewer district and sewage flow design criteria from the regulations at 310 Code Mass. Regs. § 15.203 in Title 5 of the Massachusetts Environmental Code (1996). Based on these determinations, Acton calculates the number of sewer units to be used for assessment purposes on the following formula: the number of sewer units equals the maximum floor area ratio under the then existing zoning by-law times the lot size, the result of which is divided by 4,000.

[2]As a procedural matter, the judge, in her discretion, properly considered the case presented by the cross motions for summary judgment as one request-

b. *Premature claims.* Grace also asserts what is in essence a quarrel over the application of Acton's formula to its property. The remedy for such a claim is a petition for abatement. *Hester* v. *Brockton*, 217 Mass. 422, 424 (1914). See 14 McQuillin, Municipal Corporations § 38.338 (3d rev. ed. 1998). However, Grace is barred, as matter of law, from raising the issue of abatement at this time. Pursuant to G. L. c. 83, § 15B, "[w]hen the final costs of construction of the facilities ha[ve] been determined, the city or town may assess and collect actual sewer assessments. The provisions of chapter eighty relative to the apportionment, division, interest and collection of assessments shall apply to estimated assessments under this section, but the provisions of chapter eighty relating to abatements shall not apply to estimated assessments under this section."[3] See Randall & Franklin, Municipal Law & Practice § 1541 & n.2 (4th ed. 1993). Acton assessed Grace an estimated $2,249,541.61. The final construction costs and the final assessment charges had not been determined at that time.[4] Thus, Grace's challenge to the estimated assessment is premature and must await notice of a final assessment, see G. L. c. 80, § 5, at which time it may file a petition for abatement. See *Gudanowski* v. *Northbridge*, 17 Mass. App. Ct. 414, 421 (1984) ("General Laws c. 80 sets out a comprehensive and uniform statutory scheme of administrative appeals and judicial review regarding assessments for sewers and other betterments"). See also Randall & Franklin, *supra* at § 1534.

*Judgment affirmed.*

---

ing declaratory relief. In that posture, the case was reduced to an issue of law where the facts were not in dispute. We believe that termination of the controversy over the validity of the by-law will be beneficial in any later abatement proceeding (which we discuss in the next section of this decision). Cf. *Massachusetts Retired Police & Firefighters Assn.* v. *Retirement Bd. of Belmont*, 15 Mass. App. Ct. 212, 218-219 (1983).

[3]These requirements are incorporated in section 8 of Acton's by-law: the "provisions of the General Laws relative to the assessment, apportionment, division, re-assessment, abatement and collection of sewer assessments and to liens therefore and interest thereon shall apply to assessment made hereunder."

[4]Grace elected, pursuant to St. 2000, c. 340, to make quarterly payments over a thirty-year period, and those payments totaled $95,105.88 as of November 7, 2002.