Anton **JARRELL**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A04–0401–CR–21.

Court of Appeals of Indiana.

Nov. 23, 2004.

---

Mark Small, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Anton Jarrell appeals his conviction of Possession of a Firearm By a Serious Violent Felon,[1] a class B felony, and Carrying a Handgun Without a License,[2] a class C felony. Jarrell presents the following restated issues for review:

1. Did the trial court err in admitting a handgun found under the seat of the vehicle Jarrell was driving?

2. Did conviction of the two firearm offenses violate Jarrell's right against double jeopardy?

3. Was the evidence sufficient to support the conviction for possession of a handgun by a serious violent felon?

We affirm in part, reverse in part, and remand.

The facts favorable to the convictions are that near midnight on July 16, 2003, Officer Kevin Larussa of the Indianapolis Police Department observed a car traveling on West 16th Street in Indianapolis without a license plate light. He initiated a traffic stop of the vehicle, which was being driven by Jarrell. Officer Larussa asked Jarrell for his license and registration and Jarrell provided them. Officer Larussa walked back to his car to check the license and registration. While he was sitting in his car waiting for the check to be completed, the officer noticed Jarrell "fumbling with something or playing with something." *Transcript* at 21. This aroused the officer's suspicion. Officer Larussa walked up to Jarrell's vehicle and observed that he was holding a plastic VHS videocassette box. He asked Jarrell, "Do you have anything in the vehicle I need to know about?" *Id.* Jarrell responded that there was a gun under the driver's seat. Officer Larussa directed Jarrell to exit the car. The officer then asked Jarrell if he had a gun permit and Jarrell responded that he did not. Officer Larussa asked if the gun was Jarrell's, and Jarrell responded that it was his mother's boyfriend's gun. After that, Jarrell offered an unsolicited statement that he knew the handgun was under the seat when he borrowed the car. Officer Larussa then retrieved the gun, which was loaded with three bullets, and removed the ammunition. A subsequent search of the vehicle revealed two additional bullets that

---

1. Ind.Code Ann. § 35–47–4–5 (West, PREMISE through 2003 1st Regular Sess.).

2. I.C. § 35–47–2–1 (West, PREMISE through 2003 1st Regular Sess.).

the gun could fire—one lay on the driver's seat and the other was in the VHS box Jarrell had been "fumbling" with and holding when Officer Larussa returned to the car. *Id.* Following a bench trial, Jarrell was convicted of both offenses of which he was charged, as set out above.

### 1.

■ Jarrell contends the trial court erred in admitting into evidence the gun found under the driver's seat.

■ Trial courts enjoy broad discretion in ruling upon the admissibility of evidence. *Griffith v. State*, 788 N.E.2d 835 (Ind.2003). Such rulings will be disturbed only upon a finding of abuse of discretion. *Id.* When reviewing evidentiary decisions, we view the circumstances in their totality and determine whether there was substantial evidence of probative value to support the trial court's ruling. *Id.* We consider unconflicting evidence along with conflicting evidence most favorable to the trial court's ruling, and do not reweigh the evidence in the process. *Id.*

The legality of the search in this case may be determined by application of the principles enunciated in *Lockett v. State*, 747 N.E.2d 539 (Ind.2001)—a case factually similar to the one before us. In *Lockett*, a police officer initiated a traffic stop of a vehicle because he believed the driver, Lockett, was intoxicated. After pulling the car over and smelling the odor of alcohol emanating from the inside the vehicle, the officer asked for Lockett's identification and asked if he had any weapons in the vehicle. The officer then requested that Lockett get out of the car for a sobriety check. Lockett provided his identification and exited the car, but did not respond to the weapons inquiry. As Lockett was exiting the vehicle, the officer again inquired about the presence of weapons. This time, the defendant responded, "Yes, sir, underneath the driver's seat." *Id.* at 541.

The defendant in *Lockett* was charged with, among other things, carrying a handgun without a license. At trial, the defendant challenged the admissibility of the gun on the same basis that Jarrell challenges the court's ruling in the instant case, viz., police questioned the detainee about the presence of weapons without first giving the *Miranda* advisement. The *Lockett* court rejected the argument following an analysis of the proper balance between the safety of police officers versus the Fourth Amendment's guarantee against unreasonable searches. Jarrell contends that *Lockett* is inapposite here because in that case the officer framed the question in terms of weapons, whereas Officer Larussa did not specifically mention weapons, but instead asked generally if there was *anything* in the car he (Officer Larussa) should know about. In determining whether that factual distinction makes any difference in this case, we are mindful of the purpose of the rule announced in *Lockett.*

Plainly, the purpose of the *Lockett* rule is to promote officer safety. Our supreme court has determined the laudable and important goal of protecting Indiana's law enforcement community in this potentially dangerous setting warrants whatever minimal intrusion a question and answer regarding weapons impose upon the detainee. In fact, the court noted that it is less intrusive than another means for accomplishing the same end, which has already been approved by our courts, i.e., asking the detainee to exit the vehicle. *See id.* at 542 ("[i]n comparison to ordering a motorist stopped for a traffic violation to exit the car, which is permitted under the Fourth Amendment, asking whether the stopped motorist has any weapons is far less intrusive and presents insignificant delay").

Although it would have been preferable for Officer Larussa to ask specifically about the presence of weapons, the net effect was the same as if he had: Jarrell divulged there was a handgun under the driver's seat. Therefore, on the facts of this case, the difference in the form of the questions posed respectively by Officer Larussa and the officer in *Lockett* is of no consequence. We decline to create "magic words" in applying the *Lockett* principle concerning a police request about weapons to a detained motorist. That is especially so here where Jarrell readily divulged the gun's presence after being asked only once, and in a manner and under circumstances that cannot fairly be described as coercive in nature. Moreover, "[t]he question was justified by police safety concerns, and it did not materially extend the duration of the stop or the nature of the intrusion." *Id.* at 543.

Finally, we stress here that our analysis applies only to situations in which a *weapon* was found following a general *Lockett*-type inquiry such as Officer Larussa posed here. The question of the admissibility of other (i.e., non-weapon) types of contraband seized as a result of such a general inquiry is not before us. Because Officer Larussa's question was not an unreasonable search and seizure under the Fourth Amendment, the trial court did not err in overruling Jarrell's challenge to the admissibility of the gun.

2.

█ Jarrell contends conviction of both firearms charges violated double jeopardy principles. The State comes near to conceding the point in stating "Defendant's convictions may violate principles of double jeopardy." *Appellee's Brief* at 5.

█ The Double Jeopardy Clause in the Indiana Constitution is embodied in Article 1, Section 14, which provides, "No person shall be put in jeopardy twice for the same offense." Our supreme court has concluded this provision was intended to prohibit, among other things, multiple punishments for the same actions. *Richardson v. State,* 717 N.E.2d 32 (Ind.1999). In *Richardson,* our supreme court established a two-part test for analyzing double jeopardy claims. According to that test, multiple offenses are the same offense in violation of Article I, Section 14, "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State,* 717 N.E.2d at 49. If the evidentiary facts establishing one offense establish only one or several, but not all of the essential elements of the second offense, there is no double jeopardy violation. *Spivey v. State,* 761 N.E.2d 831 (Ind.2002). According to *Richardson,* the statutory elements test and the actual evidence test are separate considerations under the double jeopardy analysis. Therefore, even where multiple offenses do not violate double jeopardy under the statutory elements test, they may nonetheless violate double jeopardy "if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." *Montgomery v. State,* 804 N.E.2d 1217, 1224 (Ind.Ct.App.2004), *trans. denied* (quoting *Castillo v. State,* 734 N.E.2d 299, 303 (Ind.Ct.App.2000), *summarily aff'd,* 741 N.E.2d 1196 (Ind.2001)).

█ To convict Jarrell of unlawful possession of a firearm by a serious violent felon, the State was required to prove Jarrell was (1) a serious violent felon, (2) who knowingly or intentionally, (3) possessed a firearm. *See* I.C. § 35–47–4–5(c). With respect to the charge of carrying a handgun without a license, the State was

required to prove Jarrell (1) carried a handgun, (2) in any vehicle.[3]

At trial, the State introduced records indicating Jarrell was previously convicted of a felony that is characterized as a "serious violent felony" under I.C. § 35–47–4–5(b)(23). Also at trial, the State presented evidence that a handgun was found lying under the driver's seat of the vehicle Jarrell was operating. The trial court found that Jarrell constructively possessed the handgun. This evidence was used to prove both an essential element of the unlawful possession of a firearm by a serious violent felon, i.e., that Jarrell possessed a firearm, and all of the essential elements of carrying a handgun without a license, i.e., that Jarrell carried a handgun in the vehicle. In the presentation of its case, the State failed to demonstrate that the offenses were supported by separate and distinct facts. Accordingly, Jarrell has demonstrated there is a reasonable possibility that the evidentiary facts used to establish an essential element of his conviction for unlawful possession of a firearm by a serious violent felon were also used to establish that he possessed a handgun without a license. Therefore, we remand with instructions to vacate Jarrell's conviction and sentence for carrying a handgun without a license. *See Alexander v. State,* 768 N.E.2d 971 (Ind.Ct.App.2002), *trans. denied*

3.

Jarrell contends the evidence was insufficient to support his conviction for possession of a handgun by a serious violent felon. Jarrell's argument on this issue consists only of two full paragraphs of generic, boilerplate recitation of the appellate standard for reviewing claims of insufficient evidence, followed by this sentence:

"If this court grants relief as sought in the argument contained in sub-section A of this brief and excludes from evidence the firearm obtained in the course of the illegal search, then the evidence is insufficient for conviction, and the Court of Appeals should issue its order accordingly." *Appellant's Brief* at 11. It appears, then, that Jarrell's success with respect to this issue hinges entirely upon prevailing on Issue 1 of this opinion. Having failed to do so, Jarrell's claim of insufficient evidence is without merit.

Affirmed in part, reversed in part, and remanded.

DARDEN, J., and BAKER, J., concur.

---

**3.** The State was not required to prove Jarrell did not possess a valid license to carry the handgun because that is not an essential element of the crime. Rather, proof of a valid license is a defense. *See Washington v. State,* 517 N.E.2d 77 (Ind.1987).